UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

ADAM M. HEMINGWAY,       )
                         )
           Plaintiff,    )
                         )
v.                       )  Case No. 1:20 CV 200 SNLJ
                         )
KILOLO KIJAKAZI,[1]      )
Acting Commissioner of Social Security, )
                         )
           Defendant.    )

**MEMORANDUM AND ORDER**

The Commissioner of the Social Security Administration denied plaintiff Adam Hemingway's application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff now seeks judicial review. As discussed below, the Commissioner's decision is supported by substantial evidence on the record as a whole and is affirmed.

**I.   Background**

Plaintiff was born in 1983. He completed the twelfth grade and worked for years as a bag machine operator and laborer. Plaintiff reported severe back pain starting in March 2017. He received treatment, including physical therapy and prescription medications, but continued to have pain and numbness in his back, hips, and legs. He had back surgery in December 2017. Plaintiff reported some continuing pain post-surgery and participated in

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

1

physical therapy. By March 2018, he showed significant reduction in pain, said he was very happy with his surgery results, and was cleared to return to work without restrictions.

Plaintiff claims his back pain returned shortly after he returned to work. He quit his job in May 2018, claiming he could no longer work due to pain. Plaintiff did not receive medical treatment for his back pain between March 2018 and December 2018. Plaintiff claims he lost his medical insurance when he quit his job and could not seek treatment until he received financial assistance through the hospital.

Plaintiff had a consultative examination in August 2018. At that examination, plaintiff claimed significant functional limitations, including only being able to sit for 15 minutes, stand for 20 minutes, walk a block, and lift or carry 5 pounds repetitively and 10 pounds occasionally. The consultative report indicated plaintiff had lumbar spine tenderness and reported a pain intensity ranging from 5/10 to 8/10. Plaintiff could squat and rise with moderate difficulty; rise from a sitting position without assistance; get up and down from the exam table without difficulty; walk on heels and toes with ease; and exhibited a symmetric and steady gait with normal range of motion and tandem walking.

Plaintiff applied for disability benefits and supplemental security income in October 2018, alleging disability as of May 29, 2018. His claims were initially denied. Dr. Susan Rosamond completed a Disability Determination Explanation in October 2018. She found plaintiff's reported functional limitations partially consistent with the medical evidence in the file. Dr. Rosamond concluded plaintiff had exertional, postural, and environmental limitations but was not disabled and retained the ability to perform light work.

Plaintiff went to the emergency room in December 2018 with low back pain and right leg numbness. Plaintiff had multiple follow-up visits. In March 2019, plaintiff's doctor noted he had exhausted conservative treatment options and his next option was a lumbar fusion surgery. Plaintiff indicated he wanted to hold on this for several months. Plaintiff's medical records from July 2019 state he was in "excruciating constant pain" and wanted to proceed with surgery. Doc. #14-9 at 341. He had the second back surgery in August 2019. After that surgery, plaintiff's medical records indicate he had incisional pain but reported resolution of radiculopathy, numbness, and tingling.

After plaintiff's disability claims were initially denied, he requested a hearing. An administrative law judge (ALJ) presided over a video hearing on September 10, 2019. Plaintiff was represented by an attorney at the hearing, who argued it was too early after plaintiff's second surgery to know how well he would recover. He asked to leave the record open for 30 days to submit additional evidence post-surgery, which the ALJ permitted.

At the hearing, plaintiff testified the severity of his pain had kept him from working since May 2018. He indicated he could not stand or sit for more than 5 to 15 minutes at a time without his legs going numb and had difficulty completing basic household chores. Plaintiff testified his recovery from his second surgery had been very painful and he had limited mobility and ability to care for himself at that time.

The record includes medical records through October 2019. At his surgical follow-up appointments through October 2019, plaintiff's doctor recommended continued use of prescription pain medications as needed and told plaintiff to increase ambulation and continue to refrain from twisting and bending at that time. Plaintiff's post-surgery medical

3

notes indicate the pain he had experienced preoperatively had improved and he was healing well. Those records do not indicate further complaints of pain or other symptoms.

## II. The ALJ's Disability Determination.

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *See id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

In this case, the ALJ issued an unfavorable decision on December 27, 2019, concluding plaintiff had not been under a disability within the meaning of the Social Security Act from May 29, 2018, through the date of the decision.

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). At step one, the Commissioner considers whether the claimant is engaging in substantial gainful work activity. The ALJ found plaintiff did not perform substantial gainful activity during the alleged period of disability.

At step two, the Commissioner considers whether claimant has a severe impairment that significantly limits his ability to work. The ALJ found plaintiff had two severe

4

impairments that significantly limit his ability to work: degenerative disc disease of the lumbar spine and post-laminectomy syndrome.

At step three, the Commissioner determines whether any severe impairments or combination of impairments meet or medically equal the criteria of an impairment listed in the applicable regulations. The ALJ found plaintiff's severe impairments did not meet or equal the severity of a listed impairment.

At step four, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotations omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The ALJ determined plaintiff retained the RFC to do "sedentary work . . . except the claimant can occasionally climb ladders, ropes, and scaffolds. He can frequently balance, stoop, kneel, crouch and crawl. He should avoid concentrated exposure to hazards such as unprotected heights and danger[ous] moving machinery." Doc. #14-3 at 13. The ALJ found this RFC appropriately accounted for plaintiff's physical limitations based on the record, including plaintiff's surgical history and continued use of pain medication. A vocational expert testified at plaintiff's hearing. When presented with this RFC, the vocational expert opined that an individual with this RFC could not perform plaintiff's past work. The ALJ concluded plaintiff could not perform his past work.

5

At step five, if the plaintiff's RFC does not allow him to perform past relevant work, the Commissioner must show other work exists in significant numbers in the national economy that plaintiff can do, given his RFC, age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). If the plaintiff can make an adjustment to such other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Though the Commissioner has a limited burden of production at step five, the burden of persuasion to prove disability remains on plaintiff. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004); *McNary v. Saul*, 2021 WL 3794208 at *2 (E.D. Mo. Aug. 26, 2021) (slip copy).

At plaintiff's hearing, the vocational expert opined that an individual with plaintiff's RFC could perform jobs that exist in significant numbers in the national economy, including call-out operator, information clerk, and hand bander. The vocational expert testified that if an individual needed to alternate between sitting and standing every 15 minutes, he would require an accommodation to perform these jobs and that a person could generally not hold these jobs if he needed to lie down during the workday.

Based on the vocational expert's testimony, the ALJ concluded that, considering plaintiff's age, education, work experience, and RFC, he could make a successful adjustment to other work that exists in significant numbers in the national economy. As a result, the ALJ found plaintiff "not disabled" and denied his claim.

Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied. Defendant agrees plaintiff has exhausted his administrative remedies. The ALJ's decision stands as the final decision of the Commissioner subject to judicial review.

### III.   Standard of Review

The Court must affirm the Commissioner's decision if it complies with the law and is supported by substantial evidence on the record as a whole. *Willcockson v. Astrue*, 540 F.3d 878, 879 (8th Cir. 2008). Substantial evidence is less than a preponderance of the evidence but enough that a reasonable person might find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001); *Smith v. Saul*, 2021 WL 307554 at *2 (E.D. Mo. Jan. 29, 2021) (slip copy) ("Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence."). This "substantial evidence test" is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (cleaned up). The Court must also consider any evidence that fairly detracts from the Commissioner's decision. *Id.*

"[I]f there is substantial evidence on the record as a whole, [the Court] must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992). The Court does not "reweigh the evidence presented to the ALJ" and must "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007) (quotation marks omitted). This Court does not substitute its own judgment for that of the ALJ—even if different conclusions could be drawn from the evidence, and even if this Court may have reached a different outcome. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

7

## IV. Discussion

Plaintiff argues the ALJ's decision was not supported by substantial evidence because the ALJ did not properly consider plaintiff's testimony and did not provide sufficient reasons for discrediting his subjective reports of pain. In determining plaintiff's RFC, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms but that his statements about the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.

The ALJ noted "[plaintiff] showed improvement in symptoms after his first surgery and returned to work, and there were no clinical findings after his second surgery to indicate there were any complications or lack of symptom relief." Doc. #14-3 at 14. The ALJ discussed plaintiff's medical history. The ALJ noted plaintiff still complained of right hip pain after his December 2017 surgery but felt much better in March 2018 after physical therapy. At that point, although plaintiff still had intermittent mild soreness, he was very happy with his surgery results and was cleared to return to work with no restrictions. The ALJ noted plaintiff claimed significant functional limitations at his August 2018 consultative examination and showed lumbar spine tenderness and moderate difficulty squatting. But the ALJ noted numerous ways in which the findings of that examination were not consistent with plaintiff's claimed limitations, including: lack of clubbing, cyanosis, or edema in his extremities; symmetric and steady gait; lack of an assistive device; no palpable muscle spasms; normal muscle bulk and tone; ability to rise from a

sitting position and get up and down from the exam table without assistance; ability to walk on heels and toes with ease; normal tandem walk; and normal range of motion.

The ALJ discussed plaintiff's medical records through his second surgery and follow-up visits after that surgery. The ALJ noted that although plaintiff was still recovering from surgery at the date of decision, the record lacked any documentation from his neurosurgeon showing plaintiff continued to suffer from symptoms as plaintiff alleged at his hearing. The ALJ found support for limiting plaintiff to a sedentary exertional level based on his two spinal surgeries but found no evidence to support plaintiff's claimed limitations "as there is no documented need for an assistive device to ambulate," "no further evidence that the [plaintiff's] radiculopathy continued," and "no evidence that the [plaintiff] has limits in his functioning." *Id.* at 15. The ALJ did not find record support showing plaintiff's symptoms persisted to such an extent that they impacted his ability to perform most activities of daily living. The ALJ found Dr. Rosamond's consultative report somewhat persuasive, though concluded greater exertional limitations were appropriate based on plaintiff's subsequent medical history and second surgery.

Plaintiff identifies numerous perceived errors in the decision and claims it does not comply with Social Security Ruling 16-3p (SSR 16-3p) (2016). SSR 16-3p directs adjudicators to "consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms" and to use that evaluation to determine how an individual's symptoms "limit ability to perform work-related activities." Factors to consider when assessing a claimant's subjective allegations of pain include daily activities; the nature, duration, frequency, and intensity of symptoms; precipitating and aggravating

9

factors; and the type of medication or treatment used for symptom relief. *Id.* Plaintiff claims the ALJ's decision was not supported by substantial evidence because he: failed to consider plaintiff's testimony about his limitations; failed to give good reasons for discrediting plaintiff's allegations about his pain and physical limitations; failed to consider that plaintiff received only temporary relief from his first surgery and was close in time to his second surgery; improperly relied on Dr. Rosamond's opinion; failed to consider plaintiff's limited daily activities; and failed to credit plaintiff for his strong work history.

First, contrary to plaintiff's argument, the ALJ's decision shows the ALJ did consider plaintiff's testimony about his limitations. The ALJ noted several points from plaintiff's testimony in his analysis, including that plaintiff testified he could not stand or sit for more than 15 minutes at a time before experiencing numbness in his right lower extremity and was using a walker for stability around the house, though it was not prescribed. The ALJ noted that plaintiff explained his lack of medical care from March to December 2018 was because he lost his insurance when he quit his job and was denied Medicaid coverage. The ALJ also discussed a letter from plaintiff's wife in which she stated plaintiff had been "hard working" until his constant back pain started and described how she had to help him in his daily life, including with showering, getting dressed, putting on shoes, and wiping after bowel movements. Doc. #14-3 at 13-14. The ALJ's decision shows he did consider plaintiff's testimony about his pain and physical limitations in making the RFC determination. *See, e.g., Lawrence v. Saul*, 970 F.3d 989, 996 (8th Cir. 2020) (affirming where ALJ "did not fail to acknowledge" the evidence plaintiff focused on but rather "placed different but permissible weight" on it).

10

Second, the ALJ's decision does detail his reasons for discrediting plaintiff's allegations about the frequency and intensity of his physical limitations. After discussing plaintiff's testimony, the ALJ explained why he found plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms not entirely consistent with the medical evidence and other evidence in the record. The ALJ noted that plaintiff's records showed his symptoms improved after his first surgery and that he was able to return to work without restrictions. Plaintiff's symptoms returned after he went back to a medium-exertion level job in March 2018. The ALJ compared plaintiff's description of his symptoms in August 2018 to the results of his consultative examination and detailed why he concluded that overall, "the findings on the consultative examination were not consistent with his alleged difficulties with physical activities." Doc. #14-3 at 15. The ALJ discussed the details and consistency in plaintiff's medical records, noting plaintiff's symptoms, complaints of pain, and reports of his abilities and limitations.

The ALJ considered plaintiff's records after his second surgery and noted that although plaintiff complained of incisional pain, he "reported resolution of radiculopathy, numbness and tingling" and "moved all extremities with full strength and normal range of motion." *Id.* The ALJ also noted that those records did not include any further complaints of his prior symptoms, including right leg pain and diminished mobility. The ALJ found the record did not support the limitations plaintiff claimed, noting nothing showed he needed an assistive device to ambulate, had continued radiculopathy, or had limits in his functioning after the second surgery. "[T]he ALJ's credibility findings related to

11

[plaintiff's] subjective complaints are supported by evidence in the record." *See Twyford v. Commissioner, SSA*, 929 F.3d 512, 518 (8th Cir. 2019).

Third, the ALJ's decision does show consideration of the relative success of plaintiff's surgeries. The ALJ discussed the initial success of plaintiff's first surgery and the recurrence of his symptoms after he returned to work. The ALJ left the record open at plaintiff's request to allow him to submit additional records after his second surgery. The ALJ then considered those records. The ALJ noted that plaintiff continued to recover from surgery at the time of decision but also noted that plaintiff's medical records after his second surgery indicated that surgery provided him symptom relief. The ALJ did not conclude that plaintiff could again return to a medium-exertion job. Rather, the ALJ considered plaintiff's entire medical history, the apparent success of his second surgery, and his continued use of pain medications as needed and determined that, based on the record before him, plaintiff retained the RFC for sedentary work with limitations. On this record, the ALJ's decision is not "outside the available zone of choice." *Twyford*, 929 F.3d at 518 (quotation marks omitted).

Regarding Dr. Rosamond's opinion, the ALJ's decision shows that this was just one factor of many he considered and that he only gave that opinion partial weight, considering other evidence in the case and further developments in plaintiff's medical history. This was not an error. *See Twyford*, 929 F.3d at 518. The ALJ discussed plaintiff's claimed limitations in his daily activities but found those claims not entirely consistent with the rest of the record, as discussed above. And although a strong work history may lend a claimant credibility, the ALJ is not required to write a detailed analysis of every factor considered.

12

*See Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004). The ALJ's decision shows he applied correct legal standards, and the record contains substantial evidence supporting his determination. The ALJ's decision will be affirmed.

## V. Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own judgment for that of the ALJ. *McNamara*, 590 F.3d at 610. Having found the ALJ's conclusions were supported by substantial evidence and applied correct legal standards, this Court affirms the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint [Doc. #1] is **DISMISSED with prejudice**. A separate judgment will accompany this Order.

Dated this 20th day of January, 2022.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE